**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES BENTON** | ) | |
| 3419 W. 100th St. #Up | ) | **CASE NO.:** |
| Cleveland, Ohio 44111 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | **JUDGE:** |
| | ) | |
| **CITY OF WILLOUGHBY** | ) | |
| C/O | ) | |
| Willoughby Law Director | ) | |
| Willoughby City Hall | ) | |
| 1 Public Square | ) | **COMPLAINT** |
| Willoughby, Ohio 44094, | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| and | ) | |
| | ) | |
| **OFFICER RYAN GREGORIN** | ) | |
| C/O | ) | |
| Willoughby Law Director | ) | |
| Willoughby City Hall | ) | |
| 1 Public Square | ) | |
| Willoughby, Ohio 44094, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **MAYOR & SAFETY DIRECTOR** | ) | |
| **ROBERT FIALA** | ) | |
| C/O | ) | |
| Willoughby Law Director | ) | |
| Willoughby City Hall | ) | |
| 1 Public Square | ) | |
| Willoughby, Ohio 44094, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**POLICE CHIEF JAMES SCHULTZ**      )
C/O                                )
Willoughby Law Director            )
Willoughby City Hall               )
1 Public Square                    )
Willoughby, Ohio 44094,            )
                                   )
and                                )
                                   )
**CAPTAIN PHILIP SMITH**           )
C/O                                )
Willoughby Law Director            )
Willoughby City Hall               )
1 Public Square                    )
Willoughby, Ohio 44094,            )
                                   )
and                                )
                                   )
**LIEUTENANT KEN JORDAN**          )
C/O                                )
Willoughby Law Director            )
Willoughby City Hall               )
1 Public Square                    )
Willoughby, Ohio 44094,            )
                                   )
and                                )
                                   )
**JOHN DOES NOS. 1-10**            )
C/O                                )
Willoughby Law Director            )
Willoughby City Hall               )
1 Public Square                    )
Willoughby, Ohio 44094,            )
                                   )
        Defendants.      )

Plaintiff Charles Benton, individually ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants City of Willoughby, Ohio, Mayor of the City of Willoughby and Director of Public Safety,  Robert Fiala, Willoughby Police Chief  James Schultz, Willoughby Platoon Captain Philip Smith, Willoughby Scene Supervisor Lieutenant Ken Jordan, Willoughby Police Officer Ryan Gregorin, and John Does Nos. 1-10 (collectively, "Defendants"),

and makes the following allegations upon personal knowledge as to Plaintiff's own acts, upon information and belief, and Plaintiff's attorneys' investigation as to all other matters, and states as follows:

## I.  INTRODUCTION

1.  This action arises out of the intentional, reckless and senseless use of force that Willoughby Police Officer Gregorin ("Defendant Gregorin") used upon Plaintiff Charles Benton, an unarmed Black man, who was inexplicably tased while being a patient in a Willoughby medical facility, after Willoughby police were engaged in the arrest of another black male.

2.  Plaintiff alleges that Defendant Gregorin used excessive force when he shot Plaintiff with his Taser without justification on August 22, 2022, in Willoughby, Ohio.

3.  Plaintiff further alleges, without limitation, that Defendant Mayor Robert Fiala, Patrol Captain Philip Smith, Chief James Schultz and supervisory police officers (i.e., sergeants liuetenants, and/or captains) at the City of Willoughby, hereinafter John Doe Defendants 1-10 knew or reasonably should have known of, participated in, endorsed, condoned, and/or ratified the unconstitutional conduct of their subordinates, Defendant Gregorin.

4.  Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for the deprivation of Plaintiff's, clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

5.  Plaintiff also brings this action pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny.

## II.  JURISDICTION AND VENUE

6.  This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1988

to redress a deprivation of constitutional rights as set forth herein.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because all incidents, events, and occurrences giving rise to this action occurred in the United States District Court for the Northern District of Ohio and, upon information and belief, all parties reside in this judicial district.

## III. PARTIES

### A. Plaintiff

8. At all times relevant to this action, Plaintiff is/was a resident of the City of Cleveland, Cuyahoga County, Ohio.

### B. Defendants

9. At all times relevant to this action, Defendant Gregorin, Defendant Chief of Police and Defendant John Does Nos. 1-10 are employed as police officers for Defendant City of Willoughby, Ohio, and are residents of Lake, Cuyahoga, and/or Geauga County, Ohio.

### *Supervisory Officers*

10. Defendant Sergeant Mike Fitzgerald ("Defendant Sergeant Fitzgerald") is a police officer employed by Defendant City of Willoughby.

11. At the time of Plaintiff's Taser shooting, Defendant Sergeant Fitzgerald was a Sergeant at the Willoughby Police Department and a direct supervisor of Defendant Gregorin.

12. Defendant Lieutenant Ken Jordan ("Defendant Lieutenant Jordan") is a police officer and Lieutenant employed by Defendant City of Willoughby, Ohio.

13. At the time of Plaintiff's Taser shooting, Defendant Lieutenant Jordan was the on-scene supervisor and a direct supervisor of Defendant Gregorin.

14. Defendant Captain Philip Smith ("Defendant Captain Smith") is a police officer employed by Defendant City of Willoughby, Ohio.

15.     At the time of Plaintiff's Taser shooting, Defendant Captain Smith was the Patrol Division Captain and a direct supervisor of Defendant Gregorin.

### Chief of Police

16.     Defendant James Schultz ("Defendant Chief Schultz"), at all times relevant herein, is Chief of Police for the Defendant City of Willoughby.

17.     Per section 129.03 of the Charter of the City of Willoughby, Defendant Chief Schultz is responsible for the daily operation of the Division of Police.

18.     Per section 129.03 of the Charter of the City of Willoughby, each Captain, each Lieutenant, Sergeant, policeman and special policeman is responsible to Defendant Chief and responsible to his orders and directions.

19.     Per section 129.03 of the Charter of the City of Willoughby, Defendant Chief Schultz is responsible for making written reports to the Director of Public Safety, Defendant Robert Fiala, regarding the activities of the Division of Police and any recommendations he may have for the more efficient operation thereof.

### Mayor & Safety Director

20.     Defendant Robert Fiala ("Defendant Mayor/Safety Director Fiala"), at all times relevant herein, is Mayor of the City of Willoughby.

21.     Pursuant to section 129.03 of the Charter of the City of Willoughby, the Division of Police is under the supervision of the Director of Public Safety, who also happens to be Defendant Mayo/Safety Director Fiala, and it is subject to his orders and directions.

22.     Pursuant to section 129.03 of the Charter of the City of Willoughby, Defendant Mayor/Safety Director prescribes the rules and regulations for the operation of the Division of Police and the conduct of the members thereof.

23.     Per Section 129.03 of the Charter of the City of Willoughby, Defendant Gregorin and all police officer Defendants named herein are subject to suspension or discipline for violation of the rules and regulations governing the operation of the Division of Police.

### *The City of Willoughby*

24.     Defendant City of Willoughby, Ohio ("Defendant City") is a municipal corporation located in Lake County, state of Ohio.

25.     Defendant City is located at Willoughby City Hall, 1 Public Square, Willoughby, Ohio 44094.

26.     At all times relevant to this action Defendant City employed all Defendants and all Willoughby police officers identified herein.

27.     The City of Willoughby's Police Department's mission statement, per its Annual Report of 2022, is, in relevant part as follows: "The mission of the Willoughby Police Department shall be to provide a safe environment in which residents and non-residents can live and work."

28.     According to the Annual Report of 2022 for Defendant City of Willoughby's Police Department, the Willoughby Police Department values, in relevant part:

a.     "Constitutional Rights. We shall uphold the country's democratic values as embodied in the Constitution and dedicate ourselves to the [preservation] of life, individual freedoms and justice for everyone."

b.     "Integrity. Integrity is the absolute honest and ethical personal behavior and performance of duty that must be the hallmark of every member of the department."

c.     "Professional Excellence. Recognizing the changing and diverse needs of the community, the Willoughby Police Department pledges to establish and

> maintain high performance standards to ensure public confidence and trust. Professional excellence is a direct result of progressive training, a positive attitude and personal commitment.

29.     At all times relevant hereto, Defendants violated the above-cited portion(s) of the City of Willoughby's mission statement and promises made therein to Plaintiff and all other residents of Northeast Ohio.

30.     Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of the City of Willoughby.

31.     At all times relevant herein, Defendant(s) John Doe Nos. 1-10, whose names and addresses are unknown despite the exercise of reasonable diligence, are believed to be police officers, supervisors, commanders, and/or other administrative, police department, or City employees of Defendant City of Willoughby whose identities or involvement in the events giving rise to the claims asserted herein cannot be ascertained and/or discovered by Plaintiff at the present time, but whom, through conducting discovery, may become known as being persons properly included as Defendants in this matter.

32.     At all times relevant hereto, Defendant Mayor Fiala, Defendant Chief Schultz, Defendant Lt. Jordan, Defendant Sgt. Fitzgerald, and Defendants John Does Nos. 1-10 shall be referred to, from time to time, as the "Supervisory Defendants," as set forth below.

## IV.    STATEMENT OF FACTS

33.     All preceding paragraphs are incorporated as if fully re-written herein.

34.     The misconduct of Defendant Gregroin and the Supervisory Defendants occurred on or about August 22, 2022.

35.     The misconduct of Defendant City of Willoughby has been systemic and on-going for many years prior to and through August 22, 2022.

36.     On August 22, 2022, Defendant Gregorin responds to a call at Windsor-Laurelwood in Willoughby, Ohio, involving a male and a female who are being aggressive towards nursing staff.

37.     At this time, Plaintiff is a resident at Windsor-Laurelwood.

38.     Plaintiff hears commotion outside of his room.

39.     Plaintiff opens the door to his room into the common-area hallway.

40.     Plaintiff sees Jacquez Adams striking a nurse outside of his room.

41.     Plaintiff puts Jacquez Adams over his shoulder and carries him into his room.

42.     Plaintiff tells Jacquez Adams to calm down and asks why he's acting out.

43.     Plaintiff calms Jacquez Adams down, and shortly thereafter Defendant Gregorin opens the door to Plaintiff's room.

44.     As he enters the room, Defendant Gregorin sees Plaintiff sitting between two beds, near Jacquez Adams.

45.     Defendant Gregorin sees Jacquez Adams sitting on one of the beds in the room.

46.     Defendant Gregorin tells both men to stand up.

47.     Plaintiff and Jacquez Adams both stand up.

48.     Defendant Gregorin unholsters his Taser.

49.     Defendant Gregorin aims his Taser in the direction of both men.

50.     At this point, Defendant Gregorin:

    a.  Sees Plaintiff is not hiding or trying to evade law enforcement or engage in any felony criminal act;

b.  Sees Plaintiff is not fighting any person or threatening to do so;

c.  Does not see Plaintiff be aggressive to anyone in the hospital;

d.  Does not see Plaintiff make threats to any person in the hospital;

e.  Does not see Plaintiff making any threatening gestures or movements;

f.  Does not see Plaintiff making threats to Defendant Gregorin in any way;

g.  Does not see Plaintiff fighting any person or engaging in any violation of the law;

h.  Has no report of Plaintiff fighting any person or engaging in any alleged violation of law;

i.  Sees Plaintiff and Mr. Adams responding peacefully to Defendant Gregorin's request to stand up;

j.  Does not hear any loud noises or angry words from Plaintiff;

k.  Does not see anything unusual with Plaintiff's behavior;

l.  Does not see any person advance towards him;

m.  Sees both men standing in front of him;

n.  Does not give any other directives or commands to Plaintiff; and

o.  Does not give any warnings or instructions before he chooses to use force against Plaintiff.

51.  Defendant Gregorin then intentionally discharges his Taser in the direction of both men.

52.  Defendant Gregorin strikes Plaintiff with a barb from his Taser, causing Plaintiff to be electrocuted by the device.

53.  Defendant Gregorin's Taser strike and discharge causes Plaintiff to fall over in an

involuntary fashion, hitting a bed and a desk.

54.     Defendant Gregorin's use of force is all the more outrageous given the fact that the City of Willoughby, through its victim's assistance program, had identified Plaintiff as the "victim" of an assault by Mr. Adams on August 22, 2022 – further demonstrating the City's knowledge that Plaintiff was not a threat of any kind on the day Defendant Gregorin used excessive force against him.

55.     On August 23, 2022, after shooting Plaintiff with his Taser, as aforesaid, Defendant Gregorin completed a Use of Force Report.

56.     Defendant Lieutenant Jordan, Defendant Captain Smith and Defendant Defendant Chief Shultz signed-off on Defendant Gregorin's Use of Force Report.

57.     Defendant Lieutenant Jordan, Defendant Captain Smith and Defendant Defendant Chief Shultz imposed no discipline against Defendant Gregorin for using his Taser against Plaintiff.

58.     When Defendants Lieutenant Jordan, Captain Smith and Chief Schultz signed-off on the Defendant Gregorin's Use of Force Report and imposed no discipline against Defendant Gregorin, they thus endorsed and/or ratified and/or authorized the excessive force used by Defendant Gregorin against Plaintiff.

## V.   CLAIMS ALLEGED

### COUNT I

**(Excessive Force)**

59.     All preceding paragraphs are incorporated as if fully re-written herein.

60.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

61.     Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any

statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

62.     The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

63.     For decades, United States Supreme Court has interpreted the Fourth Amendment to the United States Constitution such that police officers may only use objectively reasonable force to effectively gain control of an incident, while protecting the safety of the officer and others. *Graham v. Connor*, 490 U.S. 386 (1989).

64.     While acting under color of state law, the Defendant Gregorin and/or the Supervisory Defendants deprived Plaintiff of his well-established right to be free from excessive force, per the authority cited herein.

65.     At all times relevant to this action, Plaintiff had the well-established constitutional right not to be subjected to excessive force while being arrested, detained, or questioned, even if his detention and questioning could have been otherwise proper.

66.     In other words, on August 22, 2022, Defendant Gregorin was only permitted to use the amount of force necessary under the circumstances to detain or question Plaintiff.

67.     At all times relevant to this matter, Defendant Gregorin was clothed with the authority of the state and misused that authority.

68.     In this case, Plaintiff claims Defendant Gregorin used excessive force when he arrested and/or seized the person of Plaintiff, to wit:

a.  Defendant Gregorin discharged his Taser at Plaintiff, as stated above, and knowing or having reason to know that Plaintiff was unarmed, was peaceful, was, compliant, never brandished any weapon toward any officer or other person, nor did he act as though he had a weapon or would act violently when Defendant Gregorin encounters him;

b.  Defendant Gregorin intentionally fires his service Taser at Plaintiff and injures him with electrical charges and the barb of his Taser while Plaintiff posed no threat of any kind to Defendant Gregorin;

c.  Defendant Gregorin fires his Taser at Plaintiff as he stood peacefully in front of him, while putting no officer or other person at risk of harm or violence;

d.  Defendant Gregorin fired his Taser at Plaintiff while Plaintiff was not acting as though he had a weapon or would use any force toward Defendant Gregorin; and

e.  Defendant Gregorin's discharge of his Taser was not necessary to question or detain or otherwise safely encounter Plaintiff in the hospital room where he stood.

69.     As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to, being electrocuted by a Taser, falling on a bed and against a desk, enduring pain, anguish, embarrassment, humiliation, feeling of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## <u>COUNT II</u>

### (Supervisory Liability)

70.     All preceding paragraphs are incorporated as if fully re-written herein.

71.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

72.     The Supervisory Defendants is/are the direct supervisors of Defendant Gregorin.

73.     The Supervisory Defendants have supervisory authority over the Willoughby Police Department and/or Defendant Gregorin.

74.     At all times relevant to this action, the Supervisory Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

    a.  Defendant Gregorin's use of excessive force;

    b.  Defendant Gregorin shooting his Taser at Plaintiff when he posed no risk of any harm to any officer or civilian as he followed Defendant Gregorin's order and stood peacefully in his hospital room;

    c.  Defendant Gregorin shooting his Taser at Plaintiff when he posed no risk of any harm to any officer or civilian and Defendant Gregorin all had a clear line of sight and clear picture that Plaintiff was behaving peacefully;

    d.  Defendant Gregorin shooting his Taser at Plaintiff when Defendant Gregorin gave no verbal command nor faced no threat of violence from Plaintiff;

    e.   Defendant Gregorin otherwise creating a scene, rife with rule-breaking and violence, as he ignores his department's policies and procedures regarding the proper use of a Taser;

    f.  Defendant Gregorin failing to de-escalate the scene, thereby making the scene more dangerous to Plaintiff, the officers, and the general public;

    g.  Defendant Gregorin's tactical decisions leading up to the moment he encounters Plaintiff standing in his hospital room; and

    h.  Defendant Gregorin's use of force while facing no threat of force as Plaintiff

stood peacefully in his hospital room with his empty hands plainly visible and empty.

75.     The Supervisory Defendants knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Plaintiff, to wit: by endorsing, promoting, encouraging, and/or not disciplining Defendant Gregorin's actions, and/or by keeping him employed at the City, and/or by allowing him to continue to use his Taser as a police officer under the circumstances detailed in this Complaint, Plaintiff was injured and as a result of Defendant Gregorin's reckless, wanton, and/or willful actions which were endorsed, condoned, and/or ratified by Defendants.

76.     The Supervisory Defendants had a duty and/or were required by his/their training to take action to discipline and/or otherwise prevent Defendant Gregorin from engaging in the above-stated conduct.

77.     Despite his/their knowledge of the Defendant Shooters' misconduct, as stated above, the Supervisory Defendants took no action, failed to impose reasonable discipline, failed to follow chain of command, failed to document the instances of misconduct, and/or otherwise abandoned his/their supervisory duties.

78.     As a result of his/their failures and/or abandonment of his/their supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided Defendant Gregorin in the unreasonably violent and seizure of Plaintiff's person when he posed no threat of harm to Defendants nor anyone else at the time he was tased.

79.     The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Decedent's and Plaintiff's constitutional rights, to wit:

    a.   Defendants trained, endorsed, ratified, and/or condoned Defendant Gregorin to fire his Taser at subjects in the manner detailed above, i.e., when the subject posed no direct threat of harm to an officer or to another person;

    b.   The Supervisory Defendants knew or had reason to know that Defendant Gregorin embellished and misrepresented the events in his report detailing why he used his Taser against Plaintiff.

    c.   The Supervisory Defendants assisted Defendant Gregorin – or at least looked the other way when they knew he had exaggerated – to create an embellished narrative of the events of August 22, 2022, all to protect Defendants from civil or criminal liability; and

    d.   Despite having the aforesaid knowledge, the Supervisory Defendants continue to condone the conduct and actions of Defendant Gregorin as stated above.

80.    By their acts and failures to act as stated above, the Supervisory Defendants in fact caused Plaintiff's constitutional deprivation: to wit, Decedent was seized/tased with excessive force while obeying Defendant Gregorin's request to stand up and while posing no threat of harm to Defendant Gregorin or any other person, in violation of the 4th and 14th Amendments to the United States Constitution.

81.    As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to, Decedent, Plaintiff's brother, was shot and killed, her family was destroyed, and she has endured pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT III

### (Municipal Liability pursuant to *Monell*)

82.     All preceding paragraphs are incorporated as if fully re-written herein.

83.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

84.     Defendant Mayor Fiala and/or Supervisory Defendants is/are the top policymakers for the City of WilloughbyPolice Department.

85.     Defendant City of Willoughby maintains an armed police force, the Willoughby Division of Police, located in the Willoughby Police Department, with the power to arrest citizens.

86.     Defendant City of Willoughby is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment, as detailed herein.

87.     Defendant City of Willoughby and Defendant Mayor Fiala have a long-standing and unwritten policy or custom of shielding officers from consequences for their use of excessive force and/or ignoring the use of excessive force on citizens during arrests, to wit:

   a.  The City is known to refrain from disciplining officers who exaggerate and misrepresent events in their reporting of excessive force during the arrest and/or detention of citizens;

   b.  The City accepts excessive force as a condition of police work at the City of Willoughby, to the extent that officers are permitted to avoid prosecution for their violent actions by re-phrasing and artfully summarizing their violent actions and encounters with citizens in police documentation;

   c.  For years, Defendant Mayor Fiala has acquiesced to a culture of violence in

the Willoughby Police Department by abandoning his duty under the Charter of the City of Willoughby to exercise control over the Police Department and by avoiding any study of the number of excessive force cases and violence involved in the arrest of citizens within the City of Willoughby;

d. For years, Defendant Mayor Fiala has acquiesced to a culture of violence in the Willoughby Police Department by abandoning his duty under the Charter of the City of Willoughby to exercise control over the Police Department and by refusing and/or failing to make any requests of the Defendnat Chief of Police to examine and/or study or report on excessive force incidents in the arrest of citizens within the City of Willoughby.

88.     The unwritten policy and/or custom stated in the immediately preceding paragraphs is/are known to the Defendant Mayor Fiala and Supervisory Defendants, who approved, benefitted from, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Willoughby Police Department.

89.     Following the injuries sustained to Plaintiff, the Supervisory Defendants and Defendant Mayor Fiala continue to approve, ratify, encourage, sanction, and/or promote the policy or custom of ignoring excessive force and fostering a culture of violence as they expressed support for Defendant Gregorin's actions regarding the force used against Plaintiff, imposed no discipline on Defendant Gregorin, and have changed none of the training at Defendant City Willoughby.

90.     The aforesaid unwritten policies or customs put Plaintiff and the general public at unreasonable risk of grievous bodily harm, injury, or death.

91.     The aforesaid unwritten policies or customs in fact caused the harm that befell

Plaintiff.

92.     At all times relevant hereto, the Defendant Mayor Fiala and Supervisory Defendants initiated, authorized, condoned, ratified, and/or encouraged the aforesaid unwritten policies or customs.

93.     Defendant Mayor Fiala and Supervisory Defendants had knowledge of the aforesaid unwritten policies or customs because they worked at the City of Willoughby at the time the aforesaid policies or customs were in place.

94.     The Supervisory Defendants reviewed documents, discussed, and/or received details and information at the Willoughby Police Department about the manner in which Defendant Gregorin tased Plaintiff in his hospital room.

95.     By their actions and failures to act as aforesaid, Defendant Mayor Fiala and the Supervisory Defendants approved of Defendant Gregorin's conduct.

96.     Defendant Mayor Fiala and the Supervisory Defendants were thus on actual and/or constructive notice of these policies or customs but did nothing about them.

**Objective Indifference – Failure to Train**

97.     Upon information and belief, Defendant City of Willoughby does not train officers, such as Defendant Gregorin, to de-escalate or disengage from using his Taser where persons, like Plaintiff, are unarmed and peaceful.

98.     Upon information and belief, Defendant City of Willoughby does not discipline officers, such as Defendant Gregorin, who tase and/or injure persons, like Plaintiff, who are involved as witnesses/victims in a disturbance.

99.     Upon information and belief, Defendant City of Willoughby does not discipline officers, such as Defendant Gregorin, who fail to deescalate situations where persons, like Plaintiff,

are involved as witnesses/victims in a disturbance.

100.    The need for said training and discipline, as aforesaid, is so obvious that the failure of Defendants to conduct said training and discipline establishes Defendants' objective deliberate indifference to the constitutional rights of Plaintiff and all who live in the City of Willoughby.

101.    As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to, being shot by a Taser, pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT IV

### Assault

102.    All preceding paragraphs are incorporated as if fully re-written herein

103.    This claim is brought under Ohio common law.

104.    Defendant Gregorin intentionally attempted harm upon Plaintiff's person when he pointed his Taser at Plaintiff and fired it.

105.    Defendant Gregorin acted, as aforesaid, without authority or consent, to harm or offensively contact Plaintiff's person.

106.    Defendant Gregorin's attempt and act to harm Plaintiff's person reasonably placed Plaintiff in fear of such harm and offensive contact.

107.     As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to, being shot by a Taser, pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

## COUNT V

### Battery

108.    All preceding paragraphs are incorporated as if fully re-written herein.

109.    This claim is brought under Ohio common law.

110.    Defendant Gregorin intentionally made a harmful and/or offensive contact with the Plaintiff when he shot Plaintiff with his Taser.

111.    At the time he acted, Defendant Gregorin was acting unconstitutionally and was thus without the authority or consent to fire his Taser at Plaintiff.

112.     As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff has been damaged, including but not limited to, being shot by a Taser, pain, anguish, embarrassment, humiliation, feelings of powerlessness, harm to self-esteem, emotional distress, fear, anxiety, loss of sense of personal safety, dignity, and legal fees and costs.

### VI.    PRAYER FOR RELIEF

113.    WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for not less than $1,000,000.00, including but not limited to:

a.  Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

b.  Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

c.  Equitable relief, including, without limitation, that Defendant City of Willoughby be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

d.  Attorneys's fees per Title 42 U.S.C. § 1988 and the costs of this action and

other costs that may be associated with this action; and

e.   Any and all other relief that this Court deems equitable, just and proper.

## VII.   JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

Respectfully submitted,

*/s/ Robert F. DiCello*
Robert F. DiCello (0072020)
Kenneth P. Abbarno (0059791)
Justin J. Hawal (0092294)
Peter C. Soldato (0099356)
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.:  440-953-8888
rfdicello@dicellolevitt.com
kabbarno@dicellolevitt.com
jhawal@dicellolevitt.com
psoldato@dicellolevitt.com

*Counsel for Plaintiff*